# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Christopher J. B.,                                   Case No. 20-CV-2631 (JFD)

                    Plaintiff,

v.                                                                   **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

                    Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Christopher J. B. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). Plaintiff contends he is disabled by severe irritable bowel syndrome ("IBS"), a condition characterized by chronic inflammation of the gastrointestinal tract; fecal incontinence; fecal urgency; anxiety; depression; hypothyroidism; high blood pressure; lower back pain; arthritis in his left knee and hip; bilateral shoulder impingement syndrome; sleep apnea; and tinnitus in his left ear. The case is currently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 36) and Defendant's Motion for Summary Judgment (Dkt. No. 38).

The Court reads Plaintiff's Motion as seeking reversal of the Commissioner's final decision on three grounds: that the administrative law judge ("ALJ") erred when he (1) unfairly denied benefits to Plaintiff when Plaintiff had inadequate legal representation; (2) misstated and omitted facts; and (3) determined that Plaintiff's Residual Functional

Capacity ("RFC")[1] did not require limitations related to Plaintiff's IBS that would rule out all jobs requiring Plaintiff to leave his home. As set forth below, the Court concludes that the ALJ did not err in any of these respects and therefore denies Plaintiff's Motion, grants the Commissioner's Motion, and affirms the Commissioner's final decision. The Court concludes with some words addressed directly to Plaintiff.

## I.    BACKGROUND

Plaintiff applied for DIB benefits on December 14, 2018, alleging disability beginning on August 20, 2014. (Soc. Sec. Admin. R. (hereinafter "R.") 15, 256–62.)[2] His alleged disabling impairments most relevant to the issues raised on judicial review include severe IBS, fecal incontinence, and fecal urgency. (R. 293, 308–314.)

### A.    Relevant Medical Evidence

The most relevant medical evidence is from the period between the date of the alleged onset of disability (August 20, 2014) through the date of the final decision (January 13, 2020). The Court therefore focuses on evidence within that general timeframe in this Order. In addition, the Court does not summarize all of the medical evidence in the record, but only the evidence pertaining to the issues raised for judicial review.

In medical records provided by the Minneapolis Veteran's Affairs Medical Center in January 2019, between 2013–2014 Plaintiff underwent physical therapy and reported

---

[1] RFC, or residual functional capacity, "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

[2] The Social Security administrative record is filed at Dkt. Nos. 30 through 30-10. The record is consecutively paginated, and the Court cites to that pagination rather than the docket number and page.

abdominal pain, remained at home with worries about incontinence, had a bowel movement every three to four days, and used Imodium to treat his incontinence. (R. 488.)

In October 2015, Plaintiff saw pain psychologist Laura E. Krause, Psy.D., who documented that Plaintiff had "an increasingly pain-contingent lifestyle" and that "60% of his daily activities/plans [were] controlled by pain" and "100% of his thoughts [were] related to planning around his bowel movements." (R. 481.) Dr. Krause recommended cognitive behavioral therapy for his anxiety, practicing biofeedback techniques, and increasing his physical endurance and stamina. (R. 486–87.) She noted that Plaintiff "does not identify a connection between **anxiety**/relaxation and bowel movements, nor does he wish to pursue additional psychological treatments." (R. 486 (emphasis in original).)

In April 2016, Plaintiff saw Eric Hernandez, M.D., Ph.D., for fecal urgency and incontinence. (R. 381.) Dr. Hernandez noted that a colonoscopy and spinal magnetic resonance imaging ("MRI") were normal and that, thus far, "[t]here is no significant abnormality to explain his difficulties with pain and [his] autonomic dysfunction[,]" but suspected that Plaintiff's spondylolisthesis (a condition in which a spinal vertebra slips forward) could be the cause of his symptoms and might respond positively to spinal fusion surgery planned for August 2016. (*Id.*) In August, Plaintiff had spinal surgery. (R. 28.)

In November 2016, the Department of Veterans Affairs ("VA") found that Plaintiff qualified for unemployability effective March 31, 2015, the date of Plaintiff's VA claim, because he was "unable to secure or follow a substantial gainful occupation because of service-connected disabilities." (R. 285.) The VA examiner found that, "[a]lthough the medical evidence of record shows some fluctuation of severity of symptoms for

[Plaintiff's] service connected disabilities, viewed in its entirety, the evidence supports [Plaintiff's] claim for individual unemployability." (*Id.*) The examiner specifically found that Plaintiff was limited by, *inter alia*, bowel-related concerns. (*Id.*)

In February 2017, Plaintiff saw gastroenterologist Ashish Malhotra, M.D., for complaints of fecal urgency and abdominal pain. (R. 453.) Dr. Malhotra documented that Plaintiff said his symptoms began after his first spinal surgery in November 2013 and had become increasingly severe over time to the point that Plaintiff found it difficult to leave his house because of fears of public incontinence. (*Id.*) Dr. Malhotra opined that Plaintiff's normal labs and colonoscopy suggested his bowel-related symptoms were functional in nature and recommended various lifestyle modifications to help with anxiety and depression, as well as regular exercise, a low fat and low sugar diet, and enemas. (R. 455.)

In May 2018, consultative psychiatrist Alford Karayusuf, M.D., performed an impartial assessment of Plaintiff's conditions. (R. 391–94.) Plaintiff complained of failed spinal fusions, fecal incontinence and urgency with abdominal pain, explosive incontinence, and concerns related to his service during the Gulf War with the National Guard from 1998 through 2014 in which he was deployed to Bosnia and Iraq. (R. 391.) Dr. Karayusuf diagnosed Plaintiff with alcohol dependence in remission, post-traumatic stress disorder ("PTSD," typically triggered by a terrifying event and characterized by flashbacks, nightmares, and anxiety), somatization disorder (typically characterized by extreme physical symptoms that cause emotional distress and problems functioning), depression, and anxiety disorder. (R. 392–93.) Dr. Karayusuf recommended that Plaintiff be limited to

4

work environments requiring few interactions and noted that his IBS concerns would likely interfere with his productivity and create a need for extra breaks. (R. 393.)

In June 2018, Plaintiff saw A. Neil Johnson, M.D., for joint pain, bowel incontinence, anxiety, depression, and PTSD. (R. 395.) Plaintiff stated that incontinence had occurred twice during that year. (*Id.*) Dr. Johnson diagnosed Plaintiff with chronic back pain after three surgeries; left knee pain with osteoarthritis after four knee surgeries; joint pain aggravated by obesity; and anxiety, depression, and possible PTSD. (R. 399.)

In January 2019, Dr. Karayusuf performed another impartial assessment. (R. 636–38.) Plaintiff complained of incontinence, and back pain with stiffness. (R. 636.) Dr. Karayusuf again recommended a work environment with limited social interactions because of Plaintiff's obsessive preoccupation with the risk that he will experience public incontinence. (R. 637–38.) He opined that Plaintiff's conditions "prevent him from being a productive worker and . . . from being able to maintain pace and persistence." (R. 638.)

In February 2019, Plaintiff saw licensed practical nurse Tina Lidke, LPN, for abdominal pain and bowel-related concerns. (R. 700.) Ms. Lidke found Plaintiff's abdomen examination unremarkable and observed that Plaintiff "doesn't seem to be coping well with his gastrointestinal symptoms and daily life in general." (R. 701.) Ms. Lidke recommended Plaintiff see a mental health professional, which he declined. (*Id.*)

During spring of 2019, Plaintiff saw several specialists who documented that Plaintiff had used Loperamide (an anti-diarrheal) successfully when leaving the house to manage his urgency sensations. (R. 697, 779.) Plaintiff again declined recommendations that he see a mental health provider. (R. 780.)

5

B.      **Administrative Proceedings**

Plaintiff's DIB application was denied on initial review and reconsideration. (R. 155–59, 162–64.) At Plaintiff's request, an ALJ held a hearing on January 2, 2020, at which Plaintiff was represented by counsel. (R. 46–66.) At the hearing, Plaintiff testified that he was last employed during his 16 years as a combat medic in the National Guard and was deployed overseas three times. (R. 48–50.) Plaintiff claimed he had no limitations for lifting, carrying, weight, or motion related to his spinal fusion surgeries, but has nerve impingement in his shoulders that cause loss of feeling in six fingers, and has had a left knee replacement and arthritis in his left hip. (R. 51.)

Plaintiff testified that his impairments limited his daily life. (R. 52.) He described being able to make meals, watch television, and play video games. (*Id.*) According to Plaintiff, a minimum of one day each week he cannot leave the house because he knows that he needs to stay close to a restroom. (R. 52, 57–58.) He claimed this is due to his IBS symptoms which began after his first spinal fusion and cause regular fecal urgency and incontinence. (R. 56–57.) Plaintiff contended that, in preparation for leaving his house, two days before he ingests irritants like coffee to try to "instigate a bowel episode." (R. 59.) Plaintiff's counsel also directed the ALJ to Dr. Karayusuf's report documenting Plaintiff's anxiety about fecal incontinence and likely resulting workplace limitations. (R. 65–66.)

Medical expert Jared Frazin, M.D., testified at the hearing that Plaintiff did not meet or equal listings in the Listing of Impairments[3] for his spine, knees, shoulder, or IBS. (R.

---

[3] The Social Security Administration's Listing of Impairments describes impairments to major body systems considered severe enough to prevent an individual from performing

53.) While Dr. Frazin thought that Plaintiff's physical impairments would require limitations to sedentary roles within the workplace, he did not recommend any environmental limitations. (R. 55–56.)

Vocational expert Jesse Ogren testified at the hearing that Plaintiff's previous work could be categorized as a stock clerk and medical specialist. (R. 62.) Based on a hypothetical question about whether a person of Plaintiff's age, education, and work experience who had some sedentary, mobility-related limitations could perform his past work, Mr. Ogren stated that such a person could not perform Plaintiff's past work. (R. 62– 63.) However, Mr. Ogren testified that there were a variety of other jobs in the national economy that such an individual could perform, including an information clerk, a polisher, or an order clerk. (R. 63.) The ALJ then further limited his hypothetical in a second question, asking Mr. Ogren whether such jobs would still be available if the person was limited to no public interaction, to which Mr. Ogren replied that two of the three jobs would still be possible for such a person. (R. 63–64.) Mr. Ogren estimated that typically in such unskilled jobs, employees receive two 10-minute breaks; a half hour break for lunch; the ability to take additional restroom breaks for up to 5% of the day; and can be absent up to two days each month and still maintain work. (R. 64–65.)

The ALJ issued a written decision on January 13, 2020, determining that Plaintiff was not disabled. (R. 41.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R.

---

any gainful activity. Most impairments listed are permanent, but regardless, there is a durational requirement that the impairment must have lasted, or be expected to last, for at least a 12-month continuous period. Establishing that a claimant has a listed impairment is often a necessary but not sufficient step to establishing that a claimant is disabled.

§ 404.1520(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. (R. 17.) At the second step, the ALJ found that Plaintiff had severe impairments of "degenerative disc disease; degenerative joint disease; irritable bowel syndrome (IBS); obesity; depression; and anxiety[.]" (*Id.*)

At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18.) In reaching this conclusion, the ALJ considered Plaintiff's past diagnoses or expressed health concerns, including his spinal complications, joint pain, bowel disease, obesity, and his fecal incontinence which Plaintiff claimed isolates him in his home and is a source of anxiety (R. 18–23.) Of relevance to the issues raised on judicial review, the ALJ found that Plaintiff's conditions did not meet Listing 5.06 for inflammatory bowel disease because the record did not contain imaging or findings showing bowel obstruction, anemia, low serum albumin (a protein made by the liver and found in the blood), a regularly tender abdomen with pain and cramping not completely controlled by medications, a perineal disease with a draining abscess, involuntary weight loss of at least 10%, or a gastrostomy feeding tube. (R. 19.) The ALJ considered Plaintiff's complaints about fecal incontinence but observed that claimant did not elect to pursue available psychological treatments as recommended by several providers. (R. 21.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, which is what Plaintiff can do despite his limitations. Based on the record, the ALJ concluded that Plaintiff had the RFC

to perform sedentary work as defined in 20 CFR 404.1567(a) except: never climbing ladders, ropes or scaffolds; occasionally climbing ramps or stairs; occasionally balancing, stooping, crouching, crawling, kneeling; frequent overhead reaching bilaterally; avoid concentrated exposure to extreme temperatures; no exposure to dangers to life or limb in the workplace; no exposure to vibrating objects or surfaces; not required to work in high, exposed places; with regards to concentration, persistence, or pace, no work in excess of SVP 3,[4] no complex decision making, and no rapid assembly line type work, meaning there could be daily quotas but not hourly quotas; no public interaction.

(R. 23.)

The ALJ then proceeded to step four and determined that, although Plaintiff could not perform his past work due to its active nature, an individual of his age, education, and work experience, limited to an RFC that permits only sedentary work, could still perform a significant number of jobs in the national economy. (R. 39–40.) Consequently, at step five, the ALJ found that Plaintiff was not disabled. (R. 40.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1–6.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.[5]

---

[4] "SVP" refers to "Special Vocational Preparation," a term used by the Social Security Administration to compare the amounts of time required to learn different types of jobs. These rankings are listed from one to nine, with lower rankings reflecting shorter periods to learn a role. For example, SVP 3 typically requires up to three months of preparatory training to learn the job, as compared to an SVP nine which may take over ten years to master.

[5] Plaintiff's Memorandum suggests that this judicial review of the Commissioner's decision "is the last attempt [he is] permitted." The Court urges Plaintiff to seek mental health treatment (see the closing paragraph of this Order). If a mental health evaluation shows that Plaintiff is disabled on mental health grounds, the Court knows of no reason that Plaintiff could not reapply for DIB on those grounds, since they are different from the grounds set forth in this case. Plaintiff should seek further information from the Social Security Administration and/or an attorney.

C.    **Judicial Review**

Plaintiff seeks reversal of the Commissioner's final decision. (Pl.'s Mem. Supp. at 1–4, Dkt. No. 37.) Plaintiff argues that the ALJ erred because he (1) unfairly denied benefits to Plaintiff when Plaintiff had inadequate legal representation; (2) misstated and omitted facts; and (3) determined that Plaintiff's RFC did not require limitations related to Plaintiff's IBS that would rule out all jobs requiring Plaintiff to leave his home. (*See id.*) The Commissioner opposes Plaintiff's Motion and asks that the final decision be affirmed. (Def.'s Mem. Supp. at 14, Dkt. No. 39.)

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent

positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.   DISCUSSION

### A.   Ineffective Assistance of Counsel

The Court reads one of Plaintiff's arguments to be that the Commissioner's decision is unfair because Plaintiff suffered from ineffective assistance of counsel across his three DIB applications. Plaintiff claims that he filed two DIB applications before this one, including a first *pro se* application in 2018, and a second DIB application in which counsel represented Plaintiff in 2019. (Pl.'s Mem. Supp. at 3.) Plaintiff claims that, for the latter, he only had contact with his attorney once, on the very day of his ALJ hearing, and that the law firm declined to continue representing him after the Appeals Council denied his appeal. (*Id.*) In the instant case, Plaintiff is again proceeding *pro se* because "no lawyers in Minnesota were taking new . . . Social Security cases when [he] was searching." (*Id.* at 4.) Plaintiff contends that "[i]t does not feel fair or just that the defendant gets to utilize the

US Attorney General[']s office and all [he] get[s] is [himself] with occasional input from a lawyer, who first said to [him], 'You needed me 4 years ago.'" (*Id.*)

While recognizing Plaintiff's frustrations, the law is settled that social security claimants do not have a constitutional right to counsel. *See, e.g., Hungerford v. Colvin*, No. 14-CV-0613 (DSD/HB), 2014 WL 7272669, at *12 (D. Minn. Dec. 18, 2014) (stating claimants have no constitutional right to counsel, although they have a statutory right to be represented if they so choose). Therefore, Plaintiff's ineffective assistance of counsel arguments fail to demonstrate that the Commissioner erred in making her final decision.

### B.   Misstatements or Omissions of Fact

Plaintiff also argues that the ALJ misstated several facts in deciding Plaintiff's case. These misstatements include that Plaintiff received a military medical retirement when he was actually honorably discharged; that he failed to appeal one of the Commissioner's previous determinations when in fact he did appeal it; that his symptoms and medical reports are inconsistent when in fact they are consistent; that the record is complete when in fact some documentation is missing; and that the hypotheticals employed accurately captured Plaintiff's RFC when in fact he is far less capable than such hypotheticals posited. (Pl.'s Mem. Supp. at 1–2.) Plaintiff also contends that the ALJ omitted the relevant fact that he is considered disabled by the Veteran's Administration. (*Id.* at 1.)

None of Plaintiff's arguments demonstrate that the Commissioner erred in her analysis and final decision. First, an ALJ is not bound by the decisions of other governmental and nongovernmental agencies, including their decisions as to disability and employability. 20 C.F.R. § 404.1504. While an ALJ considers "all of the supporting

evidence underlying" such decisions, the ALJ need "not provide any analysis in [their] decision about a decision made by any other . . . entity." (*Id.*) Here, the status of Plaintiff's departure from the National Guard is irrelevant and his disability status as determined by the VA is a decision of another agency that did not require discussion. Plaintiff fails to point to any "supporting evidence underlying" these decisions that the ALJ failed to consider, and the record shows that the ALJ did consider medical evidence submitted from the VA Medical Center that it used to find Plaintiff was disabled (*see* R. 25–27). Therefore, the Court finds that the Commissioner did not err in reaching a determination that was contrary to that of other agencies.

Next, as to Plaintiff's claim that the record is incomplete, where a claimant's record contains evidence that is consistent and sufficient to make a determination, an ALJ may properly reach a disability determination. 20 C.F.R. § 404.1520b(a). Conversely, where a claimant's record "contains an internal conflict, is ambiguous, or where the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques," an ALJ may take additional steps to resolve the inconsistency or inefficiency before reaching a determination. 20 C.F.R. § 404.1520b(b). Here, the ALJ did not find Plaintiff's record ambiguous or insufficient. While Plaintiff claims that some documents are missing from the record, Plaintiff neither points to precisely which medical visits are missing "that would have been beneficial in [his] decisions," nor does he explain what missing evidence the ALJ should have considered within those records. (Pl.'s Mem. Supp. at 2.) Moreover, the ALJ asked Plaintiff's counsel to confirm the record's completeness during the January 2020 hearing, which counsel did. (R. 52.) On this

13

evidence, the Court cannot find that the Commissioner erred in determining that the record was complete, nor does Plaintiff's disagreement with the ALJ about the consistency of the record suffice. Plaintiff may disagree with the ALJ's findings based on the record—and with his formulation of hypothetical questions to experts based on those findings—but where substantial evidence in the record supports those findings, the Court may not. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154–56 (2019).

Finally, Plaintiff argues that the ALJ erred by misstating that Plaintiff did not appeal his first application's denial in July 2018. (Pl.'s Mem. Supp. at 2 (citing R. 15).) A plaintiff bears the burden of demonstrating that an agency's error is harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Plaintiff does not cite substantial evidence that this error should have changed the ALJ's evaluation and decision. Therefore, the Court finds the ALJ's error is harmless.

## C.    Plaintiff's Residual Functional Capacity ("RFC")

The Court reads Plaintiff's most significant argument to be that the ALJ failed to properly consider and incorporate additional limitations into Plaintiff's RFC to account for his IBS-related symptoms between steps three and four. Specifically, Plaintiff claims that his condition does not allow him to leave home more than "1–2 days a week" and that, even then, he is rarely away from home "for more than an hour." (Pl.'s Mem. Supp. at 2.) Plaintiff claims that he is unable "to travel to and from work in a timely manner and be on task or at [a] station in a workplace[,]" and that "[t]he symptoms of [his] condition are best controlled in [his] home environment." (*Id.*) Thus, as the Court understands it, Plaintiff is

arguing that the ALJ erred in failing conclude from the record that Plaintiff's RFC should include a limitation ruling out all jobs that would require Plaintiff to leave his home.

There is substantial evidence in the record supporting the ALJ's conclusion that Plaintiff's RFC did not require a limitation to an at-home work environment. Specifically, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his bowel-related symptoms were not entirely consistent with the medical evidence and other relevant evidence in the record. (R. 24.)

Considering Plaintiff's claims about fecal urgency and incontinence, the ALJ concluded that the record did not provide objective findings indicating these conditions present limitations to Plaintiff's RFC. (R. 27, 34.) For example, Plaintiff had normal colonoscopies, did not appear to wear adult diapers regularly, and he used Imodium and Loperamide to control incontinence with some success. (R. 27–29, 33.) Plaintiff also declined mindfulness and other cognitive techniques recommended to address his fecal urgency and incontinence, as well as his anxiety and depression, which Dr. Malhotra suspected were contributing to Plaintiff's bowel sensations. (R. 29.) He consistently declined any mental health follow-up or consultation with an integrative health center. (R. 33.) Moreover, Plaintiff reported fecal incontinence only twice in his six months before an appointment with Dr. Johnson in June 2018, which was "not consistent with the level of limitation the claimant alleges generally due to these symptoms." (R. 31.) While Dr. Karayusuf found that Plaintiff required greater accommodation for his bowel-related symptoms than the RFC reflects, the ALJ did not find his opinion persuasive where Dr.

Karayusuf did not make objective findings based on his area of expertise, but rather relied on Plaintiff's subjective reports. (R. 36–37.)

Thus, the ALJ found the record "does not support additional limitations . . . based on IBS independent of [Plaintiff's] other impairments" and that a workday break in the morning, at lunch, and in the afternoon should "fully accommodate [Plaintiff's] urgency complaints." (R. 27.) The ALJ also noted that the vocational expert opined the jobs that a person with Plaintiff's limitations could hypothetically perform would permit him to be off task about 5%—equivalent to 2.5 minutes per hour—allowing brief but more frequent daily breaks at restroom facilities likely to be located near a typical workstation. (R. 34.)

On this record, the Court cannot find that the Commissioner erred when she determined that Plaintiff's RFC need not include limitations relating to his bowel symptoms because, where the Court finds substantial evidence supporting those conclusions, the Court defers to the Commissioner's decision. *See Biestek*, 139 S. Ct. at 1154–56; *Prosch*, 201 F.3d at 1012. Therefore, the Court finds that substantial evidence supports the Commissioner's findings between steps three and four of her evaluation process, and that the ALJ did not commit a reversible error in determining Plaintiff's RFC.

### D.    Conclusion

This Court's task, as stated above, is to review the Social Security Administration's decision to see whether it is supported by substantial evidence in the record and is free of legal error. Having done that, the Court could consider its task done. In this case, after reviewing the record thoroughly, the Court is struck—and saddened—by (a) Plaintiff's declination, on multiple occasions, to seek psychological or psychiatric assistance, and (b)

16

the degree to which Plaintiff's anxiety over the risk of suffering fecal incontinence away from home is, while clearly a real fear, not borne out by objective medical evidence. Gastroenterologists who conduct colonoscopies on Plaintiff can find no physical root cause for fecal incontinence, and other health care providers likewise find no physical cause for Plaintiff's concerns. Several providers have recommended that Plaintiff pursue mental health treatment, but Plaintiff has consistently declined to seek assistance. Help is available for Plaintiff. Plaintiff served his country honorably for many years and deployed to combat zones three times. He has earned help from the Veteran's Administration. This Court urges Plaintiff to contact the Veteran's Administration Medical Center, ask for a mental health evaluation, and follow any advice for further therapy that is given in that evaluation.

Because the Court finds that substantial evidence in the record supports the Commissioner's findings, and that the Commissioner committed no legal error, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment (Dkt. No. 36) is **DENIED**;

2.  Defendant's Motion for Summary Judgment (Dkt. No. 38) is **GRANTED**; and

3.  The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: July 18, 2022                          *s/ John F. Docherty*
                                             JOHN F. DOCHERTY
                                             United States Magistrate Judge

17